Ladies and gentlemen, please rise. This court is now in session. Please be seated. Thank you. When you're heard, please call the next case. 320-391, People of the State of Illinois, Appellee by Miles Cullen v. Chris Sanders, Appellant by Rebecca Levy. Counselor, you may proceed. Good morning, Your Honors. Good morning. My name is Rebecca Levy from the Office of the State Appellate Defender, arguing on behalf of Mr. Chris Sanders. I can't hear you. Oh, I'm sorry. Yeah. Okay. I'll try to speak louder. There's no dispute in this case that the trial court violated Supreme Court Rule 431B when questioning the potential jurors in this case during the court hearing. The issue in this case, therefore, is pretty narrow. It was counsel on direct appeal, arguably ineffective for raising this undisputed issue, not as first-pronged plain error, which was the only viable legal channel for pursuing the claim, but instead raising it as second-pronged plain error, which the Supreme Court, the Illinois Supreme Court, has affirmatively foreclosed as a meritless legal theory multiple times. Under the Post-Conviction Hearing Act, a petition is sufficient to avoid a summary dismissal, which is the posture of this case, simply if the allegations are not frivolous or patently without merit. And Sanders has met this standard. In other words, Sanders has shown that it's at least arguable that appellate counsel's failure fell below an objective standard of reasonableness and that Sanders was prejudiced by appellate counsel's failure. That the Rule 431B violation occurred and constituted error is not a fanciful factual allegation. This Court already found that the error occurred on direct appeal. So therefore, the factual basis for the claim is not fantastic or delusional. His legal claim is also not based on an indisputably meritless theory. No possible strategy supports appellate counsel's failure to raise this issue on direct appeal as first prompting error. Counsel clearly recognized the error because he raised it, but he raised it under the wrong prong, second prong, which, as I mentioned, the Elementary Court has long held that Rule 431B violations do not constitute. It's also at least arguable that Sanders was prejudiced by appellate counsel's failure to raise this issue where the evidence in the case, in this case, was closely balanced. The issue that was contested was whether or not the incident, the sex of the defendant was alleged to have committed sexual assault, whether the actual incident was consensual, which ultimately came down to a credibility contest between E.C., the alleged victim, and then the defendant, Sanders. And the credibility contest between the two of them is the definition of closely balanced. The State's case rested largely on E.C.'s, mostly on corroborated claims. She was impeached at trial by her own text messages, showing that she lied under oath. She also contradicted Sanders' testimony. And the jury clearly had questions about her credibility, which is shown by the one of several notes that it sent during deliberation when it asked to see any prior statements that E.C. made to the police. Clearly, the jury was looking for some sort of corroboration of her testimony. The jury also sent a note asking if it had to be unanimous, had to present a unanimous verdict on each of the four counts. Sanders doesn't deny that a reasonable juror could conclude that the sexual encounter was not consensual, but a reasonable jury could also conclude that the encounter was consensual. And that's exactly why the evidence in this case was closely balanced. Under SEBI, both sides presented plausible versions of the incident, and neither of their versions was fanciful. And none of the State's evidence provided such compelling support to E.C. that led victims, the count of events, as to alter the fundamental character of this trial as a credibility contest. And so there's no reason for counsel on direct appeal not to have raised this issue. And his failure to do so only could have prejudiced Sanders because it's at least arguable, which is all he has to show at this point, that counsel's failure to raise the matter as first-pronged plain error rendered the result of his appeal unreliable or fundamentally unfair. We're asking the Court to remand for second-stage proceedings under the Post-Conviction Hearing Act because the claim Sanders raised in his petition is not based on either a fantastical factuality as to nor a meritless legal theory. Thank you. Are there any questions? No. We have a given time for five. Thanks. Thank you. Good morning, Your Honors, counsel. Miles Kelleher on behalf of the people. May it please the Court. The trial court properly dismissed defendant's post-conviction petition because it was frivolous and patently without merit. Defendant's claim of ineffective assistance of appellate counsel had no arguable basis in either fact or law. Now, we know here that the trial court did commit a Rule 431B violation during jury selection, and we know that defendant did not object at trial. So the only way defendant could bring this claim was under the plain error doctrine. However, under the facts and circumstances of this case, defendant could not satisfy either prong of the plain error doctrine. The error did not constitute first prong plain error because the evidence in this case was not closely balanced. And on direct appeal. Yes, yes, this court did find that.  On the direct appeal, the defense argued second prong plain error. And in rejecting defendant's argument that this was second prong plain error, this court did observe that the evidence of defendant's guilt was overwhelming. Well, it was plain error. Plain error is plain error. The question is whether it's reversible error. They said it's not reversible error. Yes, that's correct. Right. This court found that there was a Rule 431B violation. Which is error. Yes. Right. It was not reversible error, just to be clear. Okay. So the question here is whether or not counsel would have been, appellate counsel would have been successful had he brought this claim also under the first prong of plain error on direct appeal. Plain error analysis. Exactly. Yes. Plain error analysis. And because the evidence was not closely balanced, defendant's claim under the first prong of plain error analysis would not have been successful on first, on direct appeal. And, first of all, this court found that the evidence of defendant's guilt was overwhelming. So if the evidence of defendant's guilt is overwhelming, that's another way of saying the evidence is not closely balanced. It would be impossible to have overwhelming evidence of defendant's guilt in a closely balanced case. But I want to talk a little bit about the actual evidence in this case to demonstrate why the evidence wasn't closely balanced. We had the testimony of the victim, E.C., who testified in detail about how this sexual assault occurred. She testified how a defendant pushed her onto the bed, put his hand around her neck, removed her shorts, and then forcefully put his penis inside her vagina. She was terrified. She was panicking. She was crying. And on numerous occasions, defendant told her to be quiet and threatened her in various ways. One time he said he would beat her head in. Another time, and I'm quoting, he would stick a broomstick up her butt. Another time, he threatened to go to the closet and get his gun and shoot her. No, there wasn't. In the original appeal, although the court never addressed specifically, didn't analyze it under the first prong, it did make an observation that the evidence was overwhelming, evidence of defendant's guilt. And that's supported by the rule. It did address the second prong, which was the issue raised by telecon counsel, right? On direct appeal, yes. And they rejected that. They found that, you know, despite the error that occurred, it wasn't of, you know, such substantial nature that it would deny the defendant a fair trial. Just to get this cleared up, we're here because first stage dismissal on a post-conviction petition, correct? That's correct. And the only allegation that post-conviction petition was ineffective assistance counsel because counsel didn't raise the issue of first prong, close to balanced evidence in the argument on appeal. That's the only issue that defense is challenging on appeal here. Right. Yes. And just going back to the evidence, defendant also made the victim perform oral sex on him. She, at one point, was able to sneak a phone under the sheet and dial 911, but she was so afraid to even talk to the dispatcher that she just left the phone line open. And it was only when defendant's mother enters the room and confronts them that the assault stops. And at that point, defendant starts, you know, now he gets not only is he threatening the victim, he's threatening his own mother. And at one point he pushes her into a wall because she's afraid that the mother is going to call the police on him. So in addition to E.C.'s testimony, there was a mountain of corroborating evidence. You had the testimony of the emergency room nurse, Jessica McManaman. She testified that when the victim came into the emergency room after this offense, she was tearful, she was upset, she stated that defendant had threatened her, had vaginally penetrated her, had forced her to perform oral sex, and the nurse observed there was fresh bruising and redness on the victim's hands and also on her legs. Photos were taken of those injuries and introduced at trial into evidence. In addition, the nurse performed an internal vaginal exam on the victim, and she discovered that there were tears and abrasions in two areas of the victim's vagina. And the nurse testified that the injuries she observed were consistent with a sexual assault and were consistent with the version of events that the victim had told her in the emergency room. Did she say anything else as a conclusion? Your Honor, she said that it is possible that these injuries could have been the result of rough sex, but that's exactly what the defendant did here. I mean, during his violent sexual assault on her, every indication is he was engaged in rough sex with her because he was doing all types of violent things to her, putting a pillow over her head, you know, holding her mouth with his hand. The term rough sex refers to consensual sex that is rough. Yes. So she was not, those two things are not the same. She was providing alternative possibilities. That's correct. But I will point out, Your Honor, the victim did testify. There was testimony that she had had consensual sex with another individual earlier in the evening, but she did specifically state that was not rough sex. It was consensual sex. It was not rough sex at all. And also she did testify that she did not have any of these injuries prior to the incident with the defendant here. So the notion that... Was this victim shown to have lied repeatedly? Your Honor, there were some inconsistencies, but they were minor. They had to do with, you know, incidental... If the defendant showed those inconsistencies, would you call them lies? It depends on the circumstances. It depends on, you know, the gravity and whether they dealt with, you know, collateral matters. But the thing is there's so much corroborating evidence to support the victim's testimony. And if I could just state a few more, there were the 911 calls. The first call, the dispatcher heard a woman crying in the background, a male voice in the background. And then the second 911 call where the victim is actually talking, because at this point the defendant has finally left the apartment, so finally she feels safe enough that she can actually speak to the dispatcher. She's crying. She's breathing heavily. She states to the dispatcher that she had been kidnapped and forced to have sexual intercourse. And the defendant had a gun, tried to kill not only her but also his mother. And then you have Dora Bradley's videotaped interview where she testifies that, you know, when she encounters him, the victim is naked. She's afraid. She asks for help. And then the defendant starts lashing out at her. Why? Because, you know, he thought that she was going to call the police on him. And during Dora Bradley's videotaped interview, and I'm quoting, she said that the defendant said, I know you're going to call the police, so I might as well go to jail for a good goddamn reason, for knocking both of you bitches out. That's what the defendant told Dora Bradley. And then in addition to all the corroborating evidence that corroborated E.C.'s version of events, you had other crimes evidence from witness L.W. about an incident where a defendant asked her to have sex. She said no. Defendant wouldn't leave her apartment. And then defendant pushed L.W. onto a bed, pulled up her nightgown, removed her underwear, and forced his penis into her vagina. So this was an uncharged offense, but it was introduced to show defendant's propensity to commit sex offenses. Now, the defendant, you know, came up with this version of events where, well, you know, this was all consensual, and defendant got mad because there was some dispute about money. But defendant talked to Detective, Lieutenant Scully after this offense. He never mentioned anything about a dispute about money. He told Lieutenant Scully that the victim became upset because she found out it wasn't defendant's apartment. So, you know, we can make a reasonable inference here that defendant concocted, you know, this self-serving story at the time of trial because he had to try to explain his behavior to the jury. But, again, this Court, you know, in determining whether the first prong of the plain error doctrine has been met, this Court must make a common sense assessment of the evidence. It doesn't have to believe fanciful, factual, you know, versions of events that simply aren't plausible. And this is exactly what happened here. This defendant's version of events is fanciful. It's not plausible. And there was also some notion that, you know, maybe, as we've already discussed, maybe these injuries occurred earlier in the evening and not during this offense. But look at defendant's behavior during this offense. He's threatening her. He's forcing her to engage in sexual acts she doesn't want to engage in. And he threatens his own mother. He pushes his own mother. This was a violent person engaged in a violent assault. And defendants, the injuries that the victim sustained occurred during this offense by the defendant. There's no corroborating evidence that it occurred elsewhere other than defendant's own self-serving version of events. Was there DNA testing in this case? Yes, there was. And it didn't indicate defendant DNA. However, Your Honor, defendant is not disputing he had sex with the victim here. So it shows that she had sex with two other men. Correct? Yes, Your Honor. And the reality is people have consensual sex with other people, but that doesn't preclude the possibility that they can be sexually assaulted several hours later. Sadly, that sometimes happens, and it happened in this case. So what does the defendant have to show to meet the standard for first stage? Defendant has to show that his claim is, in this case, he has to make an arguable showing of ineffective assistance of appellate counsel. And the reason he can't do it in this case is because he has not submitted any new evidence in this case. This isn't a case like some post-conviction petitions where the defendant submits affidavits from other witnesses, and then, you know, then the evidence might have to be viewed in a different light, all the evidence. Here, the evidence, the only evidence in this case is what happened at trial. And this Court found it to be overwhelming. Nothing has happened since then. I agree with you. But this Court has already reviewed the trial record and made the clear, non-ambiguous finding that the evidence of guilt is overwhelming. What is the legal impact of that? Would you characterize it as law of the case? Yes, I would, but even if this Court didn't, it still is. It's a law of the case because it's supported by the record. And nothing has changed in the three years since this Court issued. Defendant has not submitted any new evidence that might, you know, say, hey, you know, let's look at this in a different light now, in light of these affidavits or whatever evidence. Sometimes that happens in post-conviction petitions. Not in this case. Nothing has changed here. And, you know, Hodges, yes, it's, you know, the first stage is a lenient standard, yet it's not an impossible standard. And here, because the evidence was overwhelming, it's one of those cases where, you know, counsel on direct appeal did the best he could. You know, it's reasonable to assume he realized that because of the overwhelming evidence, I'm going to try for second prong plain error analysis. But, you know, in many cases, you can't succeed under either prong, and this is one of those. And, you know, advancing this case to the second stage isn't going to make the evidence any different. It's not closely balanced. And this is a – it's a – it's based on a fanciful, factual allegation that – And I'd just like to mention quickly, if I could. Okay. Yes. I'm sorry. The jury deliberations, you know, they were unanimous on one charge. Presumably they had already found defendant guilty, decided his guilt on one charge, which means they would have rejected his fanciful version of events, which was uncorroborated and positively rebutted by all the other evidence in the case. So, you know, this simply cannot be considered a closely balanced case under any circumstances. Yes. For all these reasons, as well as those that are briefed, the people respectfully request that this honorable court affirm the trial court's ruling dismissing defendant's post-conviction petition. Thank you. Thank you, counsel. Counsel, if you may reply. Very briefly, there's no requirement that a defendant present new evidence in order to – in the form of an affidavit or any other form of new evidence. But in order to advance to second-stage proceedings under the Post-Conviction Hearing Act, he, in this case, presented a claim, a constitutional claim, a claim that his constitutional rights were violated, which is sufficient under the Post-Conviction Hearing Act. Regarding the State's claim that the evidence at trial was overwhelming and this Court's finding on direct appeal that it was, second-stage prong error does not involve a weighing of the evidence. That was the only issue that was argued on direct appeal. The parties didn't argue that the evidence was overwhelming. They didn't get into the strength of it at all. This Court basically on its own just sort of summarily recited the evidence in the case and then stated without any analysis that it was overwhelming. So would you call that a fair claim? Kind of. Yeah. There's never been a side-by-side analysis of whether or not the evidence was close to balance in this case at all, which is a separate issue from whether or not this Court, as I said, threw in a judge's opinion that the evidence in the case was overwhelming when it hadn't been briefed by any of the parties. And it's not a factor in second prong claim error. I'm sorry. It's not a factor. No, no. What did you say before that? It hadn't been addressed by the parties whether the evidence was close to balance. There was no argument by either side regarding the strength of the evidence at all. Regarding the State's claim that E.C.'s testimony was credible and Sanders was not, that's just the State's view of the version of the evidence. Sanders presented an opposing view, an opposing version of what E.C. testified to. Certainly there was some kind of conflict or confrontation in the hall that involved the defendant's mother, him, and possibly E.C. But that was after the alleged sexual assault happened. Whether or not that's related to it, whether or not the sex that the two of them had was consensual is a separate issue from the conflict they had in the hall after that. And regarding the testimony from L.W. that the State introduced as propensity evidence, it really just further shows that the State didn't think that C.E.'s testimony was going to be sufficient to prove its case found reasonable doubt because they brought in extra evidence from an uncharged crime to shore up their case. If there are no further questions, we're asking for the score to be remanded for second case proceedings in the post-conviction hearing. Thank you. Thank you, counsel. Thank you, counsel, both for your arguments on this matter. It will be taken under advisement that this position shall be issued in court.